The next matter on our calendar is Global Reinsurance versus Century Indemnity. Good morning, Your Honor. Sean Keeley from Freeborn and Peters on behalf of the appellant Global. The district court held, contrary to precedent from this court that has guided the reinsurance industry for 30 years now, that Global is liable to Century for expenses without regard Are you talking about Belafonte and Unigard? Are those the cases on which you rely? Not solely, Your Honor. In fact, it's been much more recent than that. So this court referred to the holdings in Belafonte and Unigard in Munich, Munich against Munich Re in 2014, and this court again... But in the cases in which it referred to, the question was whether in the original insurance, there was unlimited liability for expenses. And in those cases, then the reasoning of Belafonte and Unigard was perfectly fine. But the question was, what happens when the original insurance contract requires the reinsurer to pay in a proportionate amount for expenses beyond the limited insurance? And where the reinsurance contract says that it follows the original one. So the cases you cite have nothing to do with the case before us, or with what the New York Court of Appeals said when a previous panel of this court certified. The only argument, and I wish you'd get to that, is that somehow, the preamble was an exception of the sort that is called for in the argument. Well, respectfully, Judge Calabrese, I disagree in terms of the other cases. So I'd like to address that very briefly and then get to what you asked me to get to. In fact, in each of the Munigree and Clearwater, the issue was the underlying insurance. The underlying insurance policy that was reinsured paid for expenses beyond its limits. That's clear in Munigree and in Clearwater, decided before and after the Court of Appeals addressed the issue in this case. So that's the first point that I want to clarify. The second is an important one here as well. The policies reinsured, the original policies, don't provide for payment of expenses in proportion beyond their limits. They provide for payment of expenses in total outside their limits. That's clear. That's the policy here. That's the policy involved in Munich and in Clearwater. Even if you didn't pay any loss, you paid expenses well beyond your limits. The difference is the reinsurance contract, in this case, specifically says it doesn't do that. And so first on the preamble, the reinsurance clause, that's precisely where the district court went wrong here in reading that. Why does that preamble, which generically, the generic language of the preamble, mean more than the language about following and the language which doesn't apply to every one these contracts, which says if you don't want to follow, you have to check off the box and the boxes were not checked off? Why on earth would generic language in the preamble prompt that? Well, first of all, I disagree that it's generic language. And secondly, I think it's a mischaracterization of our case to say that it is entirely about the language in the preamble. In fact, we are reading all four of what the district court called highly relevant provisions together, as I would note the Belafonte court did. And so why is that language in the preamble not simply general? Because it's different than other contracts in the industry at the time. This court specifically asked the district court to consider the language as well as specific context. And so we provided evidence of that. So the preamble here says in consideration, subject to the terms, conditions, and amount of liabilities set forth herein, right? So how's that different from other preambles? Because it says subject to the limits set forth herein, and that's the critical difference, Judge Menasche, which was recognized by this court in both Munich Re and in Clearwater. Because it says amount of liability, but it says amount of liability set forth herein. And so doesn't that just lead us to decide what item four in conjunction with the follow form clause means? In fact, if it sets forth that you should follow the underlying policy, then that's what's set forth herein. So how does the preamble change that analysis? Well, first of all, it changes that analysis by making clear that the re-insurance, the grant of re-insurance, is subject to the limit with the amount of liability. That specific phrase, either limit or amount of liability, is not in the subject to clauses of the other certificates available at the time that we referred the court to. That's the first point. The second point is that there is this critically different language here where this contract says subject to the limit of liability full stop. There were, again, specific context certificates available at the time to INA, Century here, including from its affiliate INA rig that said the item four limit applies to loss or damage. The American Research Certificate says the item four limit applies to loss or damage. My client did not write its contract that way. It said our re-insurance is subject to the limit. Those are critical distinctions. And the court of appeals, in this case, said you've got to give meaning to every aspect of the contract and said even minor variations. And then there were experts and the district court believed the experts on the other side who said this language means that when it says follows that you are liable according to the degrees in the underlying contract, which isn't so in many of them, but in this one it is. And that, in effect, the experts rejected your reading as a reading of what the industry reads. Now, the district court believed their experts rather than yours, didn't it? Well, respectfully again, Judge Calabrese, I don't think that's quite right on the record. At SPA 22, what the district court credited was the experts' testimony that concurrence was an important concept in the industry. That's it. The district court nowhere credited any specific interpretation of a unique industry term. What the district court found was concurrence was important to the industry at the time. And can I ask you something about something you said a moment ago? So the follow form clause says that you follow the company's policy except as otherwise specifically provided herein. But you were just saying that the way we should understand that the contract applies a different rule is you should compare it to other contemporaneous contracts and an omitted language that other contracts might have. I mean, if you have a contract that says except as otherwise specifically provided herein, shouldn't it be explicit in the contract as opposed to require somebody to compare it to other contemporaneous contracts and make inferences? Isn't that the whole point of a phrase like except as otherwise specifically provided herein? Judge Ranaschian, I see my time has expired. I'd like to answer. Of course, you can finish your answer. Thank you. So two points there. First, I'm not suggesting that the court needs to look to other contracts in order to construe this one. Where it's specifically provided herein otherwise is a comparison of this reinsurance contract with the INA policy that it reinsures. The INA policy says the limit of liability is X. It has a separate provision that says supplementary payments in addition to the limits of liability. Outside of it, we will pay Y. This contract specifically provides otherwise. It says the reinsurance is subject to the limit. And then in what the district court called the payments revision, it says this is the way we will calculate our obligation for expenses. That is specifically otherwise. The separate point about other available contracts goes to the idea of specific industry context that would help the court's decision. And I think where the district court went wrong here was in crediting concurrency. What the district court actually did is what the Court of Appeals in Albany says you don't do. You don't apply presumptions. And you cannot use custom and practice to apply a presumption to reform or rewrite a contract. Not presumptions, just trade usage, customs and practice as it was understood in the industry. That's not a presumption. Those are facts. And that's what the witnesses testified to. Judge Poole, what the witnesses testified to was that concurrence was important in the industry. And the district court actually talks about the fact that you would read the contract in that context of concurrency. But what this court said in Sampo, Japan is you cannot use custom and practice or even what's termed trade usage to read out a provision in a contract. In Sampo, Japan, this court faced a district court that looked at expert evidence that said, yes, there's this provision in the contract, but everyone in the industry understands you don't read it that way. It's not applied. Exactly the same thing the district court did here, said concurrency is important. And so that preamble, that's just sort of general. I'm going to read that out, even though this court has said multiple times, that is meaningful language. Thank you, counsel. You have reserved two minutes for rebuttal. We'll hear from Century. We can't hear you. Can you hear me now? Yes. Excellent. I apologize for that. It's John Hacker for Century and good morning, your honors, and may it please the court. As the court's questions thus far, I think have indicated the contractual issue in this case is and always has been quite straightforward. It's undisputed that the Century policies pay expenses outside their indemnity limits. The question is whether the certificates reinsuring those policies do the same thing. And the certificates themselves tell us how to answer that question. They state expressly that they follow the policies, liabilities, and terms and conditions, except as otherwise specifically provided herein. So the certificates do share in Century's liability for expenses outside the limits, unless some certificate provision specifically provides that their certificates limits, unlike the reinsured policy limits, include expenses. So what provision does that? That's the question that Global has to answer. And from the outset of this litigation, and again here today, their answer has always been one provision, and that is the limit, the certificate limit provision itself. In Global's view, the amount stated there necessarily and always includes expenses, so that when the preamble that we've already heard about this morning says that the certificate is subject to the stated amount of liability, the certificate limits must be expense-inclusive. Among other problems with that construction, most obvious is that in this very case, the New York Court of Appeals expressly rejected the rule Global is advancing. That court held, quote, New York law does not impose either a rule or a presumption that a limitation on liability clause necessarily caps all obligations owed by a reinsurer, such as defense costs, without regard to the specific language employed therein. So when the reinsured policy limit is indemnity only and includes expenses, you need to find some provision other than the limit provision itself to conclude that the certificate limit, unlike the reinsured policy, includes expenses. No such provision exists. In fact, Council, I have no problem with any of that argument. My only question is, are we still bound by Unigard? Or did the New York Court of Appeals sufficiently cast doubt on Unigard so that, given that it was holding as to state law, we are no longer bound by our original opinion? We are bound by earlier opinions. We are less bound by them when it is a matter of opinion as to state law. If there is an adequate, any kind really, it can be a lower court decision in a state that casts doubt, then we are freed. And I'm talking about Unigard, not Belfiore, because in Belfiore there was a question about what the original insurance policy required, while in Unigard it was very much like this one. So did the New York Court of Appeals cast sufficiently that we can ignore Unigard? So the answer is yes. And let me elaborate on that by explaining how we got here. And Judge Pooler, of course, is the expert on that. But we got here. But you may have been wrong before. I fully accept that. I'm going to not just rely on Judge Pooler, but I'll explain why I think she's right. In the first opinion in this case, the whole reason we're here now and detoured, although it's not just a detour, it's an important trip to the Court of Appeals, was that in the prior opinion, in this case, Judge Pooler for the panel cast, this panel already cast doubt on Unigard and Belafonte, and particularly Unigard. I completely agree with your honor that Unigard is the problematic case, because as this works. It wasn't this panel, but a panel. Yes, right, but it was the Second Circuit panel, controlling precedent here that said. My problem is that I don't really know that a panel of our court can cast doubt on a previous opinion without going in bank. They found reason to go to the New York Court of Appeals. And so the question isn't whether our prior panel had doubts. I'm sure if a prior panel had doubts, and that's why they certified. Whether that was correct or not, I'm a big certifier, so I'm not going to argue, but that was a fairly dubious certification. Nonetheless, they certified, and once they certified, the New York Court of Appeals said some things. So my question is, did what the New York Court of Appeals do sufficiently cast doubt, so that we are freed of that previous decision? And the answer is yes, and I was explaining what happened in the prior opinion, because it sets up what the Court of Appeals was doing, the question it was answering. What the prior opinion said is Unigard and Belafonte, but more importantly, Unigard, never explained why it was saying that the amount of liability trumps everything, and that it's expense-inclusive. That was the holding of Unigard, that the amount of liability in and of itself, without looking at any other provisions of the policy, includes expenses, and therefore trumps anything that suggests otherwise. And what this court said is, okay, that seems doubtful, and you're right, Your Honor, it recognized that it couldn't overrule a prior precedent itself. It did the correct thing, which is to say, we wonder if that's true under New York law, because there's a New York precedent that it applied Belafonte and Unigard. And so it's sort of by the question, is there such a rule that says the amount of liability itself determines is necessarily cost-inclusive? That's the question the Court of Appeals asked. In effect, you are saying that the only possible basis for Unigard was what the New York Court of Appeals said when it said there is no such presumption was undercut. That's correct. The holding of Unigard was that the amount of liability is expense-inclusive by its own terms, and therefore trumps all these other provisions, and trumps the follow-up form provision. That's what Unigard held. And the Court of Appeals in this case, the New York Court of Appeals, said that's not correct under New York law. It doesn't necessarily include expenses. You have to read it in the context of the entire provision, and most importantly, the following form calls, which I've already discussed and Your Honor already suggested. And we are applying New York law. That's correct. And so this court is obliged to follow, and I think Judge Calabresi was right about this, New York law, the New York Court of Appeals is an intervening higher authority that this court is obliged to follow. So whether or not Unigard was right when decided, I could argue about that all day long, but it doesn't matter because this court's intervening opinion said what matters is the New York rule of law. Let's ask the New York Court of Appeals. The court asked the Court of Appeals, and it answered the question, not in terms of Unigard, to be sure. This court didn't ask, was Unigard correctly decided? This court said, does New York law as reflected in the excess case? We couldn't ask a question as to whether Unigard was correctly decided because that wouldn't, I mean, the question has to be something that would be determinative as to this case, and it's to that that the New York Court of Appeals speaks. That's exactly right. I couldn't say it better myself, and I won't try. So what we have now coming out of the New York Court of Appeals is a ruling as a matter of law under New York law that a reinsurance accepted or a liability provision standing by itself is not necessarily or presumptively expense inclusive, and that's the entirety of Global's argument. Based on the subject, do they add subject to, but as I think Judge Menashe pointed out, that doesn't add anything. That just says it's subject to the limit of liability. Global then says, and the limit of liability per Unigard is necessarily expense inclusive. That's the rule that the New York Court of Appeals rejected. Just reading the contract, maybe that answers it, but if you didn't have the follow-up form provision, if you just had item 4, wouldn't you think that it was a cap over all expenses, including liability and expenses? It says there's a million dollars each occurrence. The reinsurer is going to pay $250,000 out of the second $500,000. It doesn't seem to say that it's only applying to a certain type of expenses, so wouldn't you naturally read that provision as putting a cap on all payments? No, Your Honor, with respect, because you have to read item 4 in connection with items 2 and 3 that precede it, and so you start with item 2, which refers to the policy that's being reinsured, and it says it identifies the policy limits of the underlying policy, right? And then item 3 defines the company retention, which is, in this case... Because that says the first $500,000 of liability. You think that's what tells you that it's only the liability and not the expenses? I mean, yes, it clearly does. Item 3 is referring back to the item 2 liability and says it retains the first $500,000. Then item 4 says the reinsurance accepted is $250,000 part of the $500,000 that's above the item 3 liability, which was, again, the item 2 liability. So all of them are fitting together and describing the indemnity liability of the century policy. You cannot, mathematically... Under your view, these provisions are just silent on expenses. I mean, yes, in the sense that they follow the form of the reinsured policy. Right. It all starts with item 2, which, subject to the terms and conditions of the underlying policy. And as the district court said... I don't think this is a major insight, but as the district court said, what the following form provision really does is just make the underlying policy part of the certificate and vice versa. You just have to read them hand in glove. And so when the certificate refers to an amount of liability, it's the amount of liability that's defined by the underlying policy. And then items 2, 3, and 4 just build off of each other. And item 4, as we explained at greater length in the brief, just mathematically cannot include expenses because then you would have a ratio that doesn't make any sense. You'd have 250,000 part of 500,000. The 250,000 on Global's view includes expenses, but the 500,000 cannot include expenses because items 2 and 3 do not. So you have a nonsensical ratio. The district court said that you would pay for the expenses in a ratio pursuant to which you're covering the liability, but only if there is a loss and not in cases where there isn't a loss. And I think you disagreed with that. But if there is no liability, there isn't a ratio, right? Because there's no ratio to calculate. So why was the district court wrong about that? So you're half correct. I mean, let's start over. Both sides disagree with the district court's reading of the fourth sentence of the payment provision. It wasn't advanced law. No experts explained it. That's not an issue before us in the contract. But it's important because the correct reading of the two really just comes out of the plain language. Sentence 3 of the payments provision prescribes a particular ratio when there is a loss. It's straightforward and the court agreed with that. Item 4 does the same thing, but it prescribes a different ratio because it can't use the same ratio that's identified in sentence 3 because there hasn't been loss payments. So it says when there are no loss payments, you just use the item 4 percentage. It doesn't refer to a cap there. It's just saying use that same percentage. So here would be $250,000 part of $500,000. And there's some complications related to that later. So you're saying that it really should be 50% when that situation applies. But that's all that section 4 is saying. That's 50% of the second half. But if there's no loss, this is not triggered. Isn't that correct? Well, if there's no loss, then item 4, excuse me, sentence 4 of the payment provision is triggered. Because as I think Judge Menashe was pointing out, when you don't have a loss, the ratio that's identified in sentence 3 doesn't work. And so you have to do something. So they added sentence 4 to explain here's the ratio that you should use. And it's the percentage that's identified in item 4. And where the court just linguistically went wrong was thinking that that made item 4 a cap. But even on its terms, sentence 4 doesn't say the number or the amount or the limit. It says the percentage. So it's not referring back to a cap in any respect. It's referring back to a percentage that you then use to calculate the proportion of expenses owed. And I'll just emphasize on this point, we're in alignment. Global agrees with us on this reading of sentence 4. Counsel, post-New York Court of Appeals decision, have reinsurers changed their policies? I don't know the answer to that. And it's not in the record. But there's a broader point about the industry reaction to Belafonte, which there was some changing of the policies. But of course, as we cite from various secondary authorities in the amicus brief here, it testifies there's been widespread rejection of the Belafonte rule in cases that are arbitrated when they're not in a court that's controlled by the Second Circuit. Because nobody in the industry thinks it makes sense. And the evidence that is in the record shows that before Belafonte, literally nobody, no reinsurers approached the treatment of expenses this way, including Global itself. The documents it produced showed that in these circumstances, consistently and only paid expenses. These policies were originally written before Belafonte were in effect. No, the certificates and the policies, yes. Yeah. But basically, all that happened after. So to say something about how these policies were written as if Belafonte affected them is kind of peculiar. Yes. And this court expressed some concerned questions about reliance on either side of the issue. I'll just make two points. One, Global didn't adduce any evidence that there was a reliance-based reason that supported its decision. And second, and perhaps more importantly, the New York Court of Appeals in instructing us all as to what New York law provides and how to read these certificates didn't include reliance as a factor that one should account for in trying to figure out what this plain language means. Thank you. Thank you, counsel. No further questions. Thank you, Your Honors. Thank you. Mr. Keeley has reserved two minutes for rebuttal. We'll hear from you now. Thank you, Your Honor. I'd like to cover two points quickly, if I may. The first on part of the last discussion that my friend Mr. Hackett had with Judge Nash. I think it is important that we both agree the district court interpretively got it wrong on that fourth sentence. And the reason that I think it is important is because what the district court's reasoning, using concurrence to apply to everything, led to reading out parts of the language. And I would refer the court just to pages 14 to 16 of our reply brief for the evidence from Sentry's own expert. Your argument there basically is it was the 13th stroke of a crazy clock, which isn't only wrong in itself, but cast doubt on all that has gone before. Well said, Judge Calabresi. But I think, yes, I think it also shows that the court didn't correctly apply the evidence before that. There are situations here where no reinsurance is owed, even though Sentry pays millions of dollars. But I'd really like to spend my remaining time to get to the conversation that Judge Calabresi and Mr. Hackett had about is this court obligated to follow Unigard, and specifically what the Court of Appeals in Albany did. Recall that the prior panel here certified a question. And the question wasn't about belliconto Unigard. It was, did the decision in excess establish a rule or presumption? That was the question. A couple important things happened up in Albany. First, Sentry asked to reformulate the question to adopt concurrency. The court rejected that. It didn't adopt concurrency. Second, Sentry asked the Court of Appeals in Albany to specifically say that it was not following belliconto and Unigard. The Court of Appeals rejected that and didn't. So what is the holding of the Court of Appeals in what we call Global IV? It is there are no rules or presumptions applied to facultative certificates. And that's where I disagree with my friend Mr. Hackett when he says the Court of Appeals rejected Global's rule. I want to make clear, Global is not asserting any rule in this case. We are asking the Court to apply our contract language, not other contract language. So then to finish up on Unigard, what the Court in Unigard found was not that the subject to the limits language trumps everything. It followed Belafonte which said these are the four provisions that are relevant. Belafonte said we have to apply New York contract principles to harmonize them all and this is the way we do it. And that's what the Court did in Unigard. And specifically in Clearwater in 2018, this Court referred to the decision of the Court of Appeals in Global and then went on to refer to Belafonte and Unigard as still good law applying to the contract language that we have here. There is no special justification for this Court to jettison 30 years of precedent that has in fact guided the industry because as Judge Calabresi pointed out, all these contracts were entered into prior to Belafonte. But what you've had in those 30 years is lots of transactions that involve books of business with these contracts. And those transactions have been entered into based on what this Court said in Belafonte, in Unigard, in Munigree, and most recently in Clearwater. And we ask the Court therefore to reverse the District Court's decision, apply our contract language, not rules or presumptions, and uphold this Court's precedent. Thank you, Counsel. Thank you both for a very lively argument. We'll reserve decision. The next case on our calendar is on submission. So I will ask the Clerk of Court to adjourn Court. Well argued, both parties in business. Court stands adjourned.